# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

---

TODD LOPEZ, As Personal
Representative of the Estate of Michael
Ponce, *et al.*,

        Plaintiffs,

And

LEE HUNT, As Personal
Representative of the Estate of
Fernando M. Garcia, *et al.*,

        Intervenor-Plaintiffs,

vs.

OIL FIELD OUTFITTERS, LLC, *et al.*,

        Defendants,

Case No.  18-CV-0351-NDF-KHR

---

## ORDER APPROVING SETTLEMENT ON BEHALF OF THE MINOR PLAINTIFF IZAIAH PONCE AND SETTING DEADLINE FOR DISMISSAL PAPERS

---

This case is before the Court on the motion to approve settlement on behalf of the

minor Plaintiff Izaiah Ponce (doc. 97, the "Motion"), the report of the guardian ad litem

("GAL") for Izaiah, Matthew Vance (doc. 95, "GAL Report"), and a supplemental report

from Mr. Vance (doc. 104, "Supplemental GAL Report").  For reasons stated in the Court's

order of August 26, 2019, the Court required the supplemental report to address several

factual issues.  Doc. 101.  In the same order, the Court set a deadline for an amended motion

to approve settlement. The deadline passed on September 10, 2019 without any party filing an amended motion. Accordingly, the motion is now ripe for resolution.

The Ponce Plaintiffs[1] and the settling Defendants[2] jointly filed the Motion. Doc. 97, pp. 1-2. The deadline for any response to the Motion has passed without the Court receiving any opposition from the Garcia Plaintiffs[3] or the non-settling Defendant Ramon Fabelo.

## I.    *Legal Framework*

Under New Mexico law, a federal court sitting in diversity must review the fairness of a settlement for any minor or incapacitated litigants because New Mexico has no statutes or rules requiring the state's probate courts to review settlements for minor or incapacitated litigants. *See, e.g., Mares-Moreno v. Singh,* 278 F. Supp. 3d 1223, 1236–42 (D.N.M. 2017). Therefore, "[t]he general rule is that the court must give approval to a settlement when minor children are involved. The court 'has a special obligation to see that [children] are properly represented, not only by their own representatives, but also by the court it[]self.'" *Landavazo v. Hearne,* No. 03-1184, 2004 WL 7338237, at *1, n.2 (D.N.M. Feb.

---

[1] The Ponce Plaintiffs are Todd Lopez as personal representative for wrongful death beneficiaries of the decedent Michael Ponce, Melissa Dominguez individually and as next friend for her minor son Izaiah Ponce, Angelina Ponce, Pauline Ponce and Joe Ponce. The Court understands from the state court record that Todd Lopez is suing only as the appointed wrongful death representative and is a nominal party.

[2] The Settling Defendants are Oil Field Outfitters, LLC, Leonardo Ferras, Pedro Sotelo, Shield Transport, LLC, Eagle River Energy Services, LLC, and Yosbel Rodriguez. A recent filing noted the remaining defendant Ramon Fabelo was close to reaching a settlement, but he is not among the Defendants participating in the settlement presently before the Court.

[3] The Garcia Plaintiffs are Lee Hunt as personal representative for wrongful death beneficiaries of the decedent Fernando M. Garcia, Rosa V. Garcia, Emilio Garcia Vega, Maria Elizabeth Garcia Vega, Reynaldo Garcia Vega, Martha Zulema Garcia Vega, individually and as representative of Juan Garcia Vega.

18, 2004) (quoting *Garcia v. Middle Rio Grande Conservancy Dist.,* 99 N.M. 802, 808, 664 P.2d 1000, 1006 (Ct. App. 1983), *overruled on other grounds by Montoya v. AKAL Sec., Inc.,* 114 N.M. 354, 357, 838 P.2d 971, 974 (1992)). *See also Salas v. Brigham,* No. 08-1184, 2010 WL 11601205 (D.N.M. Dec. 22, 2010). The New Mexico federal district court locates this duty in both state substantive law and Federal Rule of Civil Procedure 17(c)(2).

"A court is required to reject a settlement when it is presented to the court for approval and the information before the court indicates that the settlement is not fair to the minor or incapacitated person." *Salas,* 2010 WL 11601205, at *2. "The Court's role is not to review the adequacy of the performance of the minor's attorney in reaching the agreement. Rather, it is reviewing the fairness of the agreement itself." *Mares-Moreno,* 278 F. Supp. 3d at 1241 (internal quotation marks omitted).

The Court will review the GAL's recommendation and determine the proposed settlement's fairness to Izaiah under New Mexico common law. *Landavazo, Salas* and *Mares-Moreno* and other New Mexico cases rely heavily on the recommendations of the GAL but nonetheless review proposed settlements in detail to determine if they are fair to the minor or incapacitated person. These opinions address for instance the terms of the settlement agreement, the claims and the risks of trial, the apportionment of total settlement funds among the plaintiffs, the reasonableness of attorneys' fees to be deducted from the settlement pool, the reasonableness of costs and sales taxes to be deducted, the testimony of the minor or incapacitated person's guardian or parent with responsibility under a trust agreement, and whether the terms of a trust (if one is proposed) are sufficiently protective and yet flexible enough to properly benefit the minor or incapacitated person.

*II.      Analysis of Proposed Settlement for Izaiah Ponce*

*A.      Overall Settlement and Allocation Between Ponce Plaintiffs and Garcia Plaintiffs*

In this case, the GAL Report explains the overall settlement between the Ponce Plaintiffs, Garcia Plaintiffs, and Settling Defendants.  The overall settlement provides for a combined total of $4,825,000.  Of that amount, 65% is allocated to Ponce Plaintiffs and 35% to Garcia Plaintiffs.  Doc. 95.  The Supplemental GAL Report explains the division of funds between the Ponce Plaintiffs and Garcia Plaintiffs which was arrived at in a mediated agreement.  Doc. 104-1 (Ex. 7).  In this agreement, the two sets of Plaintiffs agree to a division of all settlement funds and common costs of the litigation, 65% to Ponce Plaintiffs, 35% to Garcia Plaintiffs.  The Plaintiffs agreed to this division based on the economic damages analysis of M. Brian McDonald, Ph.D. (doc. 104-2, Ex. 8, doc. 104-3, Ex. 9).  The two sets of plaintiffs also took into account the risks of pursuing the litigation through trial.  The GAL found this division of the overall settlement to be fair and reasonable.

For the amount allocated to Ponce Plaintiffs ($3,135,250), the GAL Report reflects 33.33% of that amount will go to their counsel for attorney fees ($1,045,312), $55,195 for reimbursable costs (after deducting from total costs $90,080 the common costs of $18,327 and waived costs of $16,557), and $16,463 for New Mexico gross receipts taxes.  In addition, another $30,028 will be "held in trust" for a potential claim for workers compensation reimbursement.

B.      *Attorney Fees, Costs and Potential Workers Compensation Subrogation Withheld from Ponce Plaintiffs' Settlement Funds*

Regarding the attorneys' fees to Ponce Plaintiffs' counsel, the Supplemental GAL Report notes "the contingency fee agreement in this case was in writing and clearly expressed the method by which the fee was to be determined." Doc. 104, p. 10; Doc. 104-11 (Ex. 17, fee agreement). The GAL notes under New Mexico law contingency fee agreements are generally enforceable so long as they are in writing, signed by the client, and state the method by which the fee is to be determined, including several details that the GAL notes were contained in the Ponce Plaintiffs' agreement with counsel. *Id.* The GAL further notes that Angelina Ponce, who reached the age of majority while this case was pending, signed a codicil regarding this contract. Doc. 104, p. 10; Doc. 104-12 (Ex. 18). The GAL finds the attorney fees to Ponce Plaintiffs' counsel are reasonable in this case and customary in New Mexico.

The GAL refers to as a "potential" claim the Ponce Plaintiffs' lawyers may bring against a workers compensation insurer. "FCHC [Counsel for the Ponce Plaintiffs] also reports that they do not have any type of resolution of the potential claim for reimbursement by the workers' compensation carrier. However, FCHC is showing the total potential reimbursement to be held in trust until final resolution." Doc. 95. The GAL's summary of the settlement disbursal then deducts from the funds to Ms. Dominguez, Angelina Ponce and Izaiah Ponce: "POTENTIAL CLAIM FOR WC REIMBURSEMENT (TO BE HELD IN TRUST): Workers' Comp Carrier: $30,028.28." *Id.*

The Supplemental GAL Report explains this withholding is based on

the subrogation or right of reimbursement claim asserted by the worker's compensation carrier in this matter and its reduction of the overall settlement by as much as $30,028.28, dependent on continued settlement discussions with the worker's compensation carrier.

At the time of his death, Michael Ponce was employed by Standard Energy and Michael Ponce was on the job when the crash occurred. As a result, the worker's compensation carrier for Standard Energy, (Rockwood), paid benefits for Michael Ponce's funeral expenses and additional support benefits to Angelina Ponce, Izaiah Ponce, and other members of Michael Ponce's household, including Melissa Dominguez's children. (*See* Exhibit 10: Declaration of Melissa Dominguez at ¶22). The total benefits paid amounted to $55,832.02. … Of [that amount], only $30,028.28 represents payments to Izaiah Ponce, Angelina Ponce, and for funeral expenses. … As a result, Counsel for Ponce Plaintiffs is withholding everything paid to Izaiah Ponce, Angelina Ponce and for the funeral, which is the total of $30,028.28. That is the amount subject to possible reimbursement. Because the carrier paid benefits, it has a right to reimbursement from the settlement monies obtained from the at-fault Defendants. *Gutierrez v. City of Albuquerque*, 1998-NMSC-643, 125 N.M. 643, 964 P.2d 807. Defendant would not be responsible for the right to reimbursement held by the worker's compensation carrier, rather Ponce Plaintiffs are based on the terms of the settlement in which Ponce Plaintiffs agree to resolve any outstanding subrogation claims, which would include the worker's compensation carrier. … In the event, a greater reduction is obtained and there will be additional client funds available for disbursement, those funds will be divided equally between the statutory beneficiaries Angelina Ponce and Izaiah Ponce.

Doc. 104, pp. 11-12; Doc. 104-4 (Ex. 10, M. Dominguez declaration), 104-13 (Ex. 19, subrogation ledger), 104-9 (Ex. 15, settlement agreement and release).[4] The Court finds these terms of the settlement for Izaiah are fair and reasonable.

---

[4] The copy of settlement agreement and release attached to the Supplemental GAL Report contains signatures of only the Ponce Plaintiffs. Doc. 104-9. The agreement "shall become effective immediately upon execution by Plaintiffs." *Id.,* p.6 ¶ 13. Given Section 13 of the agreement and the settling parties' representations in their notice of settlement, the Court understands this settlement agreement and release is effective even without the signatures of counsel for the Settling Defendants and Garcia Plaintiffs.

The Supplemental Report further explains the nature of the costs for which Plaintiffs' counsel will be reimbursed from the settlement funds, and the nature of the costs for which Plaintiffs' counsel has waived their right to reimbursement. The GAL attaches the Ponce Case Costs (doc. 104-7, Ex. 13), notes the amount of "common costs" that the Garcia Plaintiffs are paying under the mediation agreement, and attaches a detailed summary of the waived costs. Doc. 104-10 (Ex. 16). The waived costs includes fees for experts and investigators; they do not include compensation to the financial planning entities or intermediaries involved in the settlement for Izaiah. Doc. 104, p. 7. The GAL found the costs deducted from the Ponce Plaintiffs' settlement to be fair and reasonable.

C.    *Apportionment of Net Settlement Funds Among Ponce Plaintiffs*

This leaves $1,989,250 due to the Ponce Plaintiffs. Of that, Melissa Dominguez is to receive $200,000 for her loss of consortium; Izaiah and Angelina are each to receive $894,625. The GAL further explains the two Ponce Plaintiffs (Pauline Ponce and Joe Ponce, Izaiah's paternal grandparents) who are not reflected in the settlement disbursals "knowingly and voluntarily waived any and all potential claims or interests they may have in favor of Melissa Dominguez, Angelina Ponce, and Izaiah Ponce." Doc. 104, p. 3, Doc. 104-5 (Ex. 11, declaration of Joe Ponce and Pauline Ponce).

The apportionment of the net settlement funds among Ms. Dominguez, Angelina Ponce and Izaiah Ponce is based on the analysis of Ponce Plaintiffs' counsel and the GAL regarding the relative strength of Ms. Dominguez's loss of consortium claim under New Mexico law as Mr. Ponce's longtime partner, mother of his son Izaiah, and cohabiting fiancé at the time of his death. Doc. 104, pp. 5-6; Doc. 104-4 (Ex. 10, declaration of Ms.

Dominguez); Doc. 104-6 (Ex. 12, counsel's memorandum). The GAL found the apportionment between Ms. Dominguez, Angelina and Izaiah fair and reasonable.

D.    *Proposed Structure for Izaiah's Settlement Funds*

The settlement for Izaiah divides his $894,625 into two components: an annuity contract (current purchase price $465,922 with an internal rate of return of 3.54%) and a trust. The trust will begin with a corpus of $428,703.16 and will be administered by Capital First Trust Company as trustee for the benefit of Izaiah until he is 30 years old. Ms. Dominguez will serve as the Distribution Adviser to the Trustee.

The annuity contract guarantees periodic payments to be made to the trust. As the GAL explains it is

> built primarily around ensuring funds for educational purposes after Izaiah turns 18. The cost to purchase the annuity will be $465,922.00. The anticipated benefit over the guaranteed years of the annuity will be $816,000.00, depending on the date of funding following court approval. The internal rate of return will be approximately 3.54%, depending on the time of funding following court approval. The periodic payment schedule will be as follows:
>
> > Period Certain Annuity - $20,000.00 payable annually, guaranteed for 6 year(s), beginning on 08/01/2034, with the last guaranteed payment on 08/01/2039.
> >
> > Period Certain Annuity - $20,000.00 payable annually, guaranteed for 6 year(s), beginning on 12/01/2034, with the last guaranteed payment on 12/01/2039.
> >
> > Period Certain Annuity - $1,500.00 payable monthly, guaranteed for 12 year(s), beginning on 06/01/2034, with the last guaranteed payment on 05/01/2046.
> >
> > Life with Certain Annuity - $2,000.00 for life, payable monthly, guaranteed for 15 year(s), beginning on 06/01/2046, with the last guaranteed payment on 05/01/2061.

Doc. 95, p. 7. The annuity will pay directly into the trust, "to ensure that the periodic payments under the annuity cannot be transferred or sold, even after Izaiah turns 18." *Id.,* p. 8.

Regarding the intermediary entities involved with obtaining the annuity contract for Izaiah, the GAL explains Amicus Settlement Planners LLC is a financial planner specializing in planning related to personal injury settlements. Two "general agency" entities (one for Amicus, the other for National Liability & Fire Insurance Company) are also involved in the annuity contract, but the overall 4% of purchase price paid as a commission to the three entities is already taken into account in the guaranteed benefit and IRR (which the Court assumes stands for internal rate of return) of 3.54% on the annuity contract from USAA Life Insurance Company. *I.e.,* USAA compensates these entities without taking additional funds from Izaiah's settlement. USAA Life Insurance Company is rated A++ (Superior, highest of 16 possible ratings) by A.M. Best, Aa1(Excellent, second highest of 21 possible ratings) by Moody's Investor Service, and AA+ (Very Strong, second highest of 21 possible ratings). Doc. 104, p. 9; Doc. 104-15 (Ex. 21).

As to the trust, its initial corpus is the "amount remaining after purchase of the annuity." Doc. 95, p. 8. "The purpose of the trust is to provide for the health, education, support, or maintenance of Izaiah during the term of the Trust." Doc. 95-2 (trust agreement). The Trustee will be Capital First Trust Company. The GAL attaches information regarding the trust company and explains their fees will be paid from the trust corpus according to a fee schedule. Doc. 95-3, 95-4. The Trust will be created under the terms of the trust agreement upon approval of the proposed settlement. Upon termination

of the Trust, the Trustee will distribute the principal and any undistributed income of the Trust to Izaiah.

As noted, Ms. Dominguez will serve as the distribution advisor to the trustee. The GAL states that in that role Ms. Dominguez will "help … to ensure that the trust disbursements will be tailored to meet Izaiah's needs." Doc. 95, p. 8. Ms. Dominguez submits a declaration stating among other things she understands the funds in the annuity contract and trust are "Izaiah's money and that I will not have access to it and am not allowed to spend or otherwise dispose of Izaiah's money. … As Izaiah's mother, I am responsible to provide for his needs until he reaches the age of majority." Doc. 104-4 (Ex. 10). She further states that she approves of the settlement on behalf of Izaiah and requests the Court approve it. *Id.*

Regarding the entities involved in the trust and its investment management, the GAL also explains:

> As stated, the financial plan also involves an irrevocable trust. There are three entities coordinating the creation, administration, and ongoing management of the recommended trust. The trust documents were coordinated by Amicus Settlement Planners, LLC through Capital First Trust Company. The trust instrument provides for professional trust administration by Capital First Trust Company. Capital First Trust Company is compensated for its Trust Administration as set out in Exhibit 4. [*See* original GAL Report and its attachment Doc. 95-4] (Capital First Trust Company may carry out investment management functions, but is also specifically authorized to delegate those responsibilities to other "agents, brokers, custodians, investment counsel and investment managers and to delegate to them the discretionary authority to make purchases and sales of any investments otherwise authorized to the Trustee.") In the present matter, Amicus Financial Advisors, LLC provided the Investment Proposal, which is Exhibit 6. *Id*. at Doc. 95-6. It is anticipated that Capital First Trust Company, subject to its fiduciary and contractual obligations to the beneficiary, will delegate investment selection and trading to Amicus Financial Advisors, LLC.

> Amicus Financial Advisors, LLC is a Registered Investment Advisory firm subject to SEC regulation and currently manages over $150,000,000 in assets for individual clients, families, and trusts. Delegating the fund management is anticipated to reduce the overall fees and provide an additional layer of fiduciary oversight. The combined trust administration and fund management fees will be approximately 1.5% of the trust annually with 0.8% being paid for trust administration and 0.7% to the investment manager.

Doc. 104, p. 9. Investment of the trust assets is one of the primary purposes of the trust. Doc. 95-2, ¶ 5. The decisions of whether to employ investment advisors and how much investment management to delegate to such advisors is one of the trustee's duties. Doc. 95-2, ¶ 11. The Court finds the current plan to use Amicus Financial Advisors does not appear unfair or unreasonable, but the decisions whether to delegate investment management and if so to whom will be ongoing responsibilities of the trustee under the terms of the trust agreement.

In sum, the GAL concludes the proposed settlement for Izaiah is fair and in Izaiah's best interests and GAL recommends the Court approve. Doc. 104, p. 13. The GAL provides a declaration affirming the fact statements in his reports are based on his investigation, and his opinions therein were "generated after a full and thoughtful investigation by me of the facts in this case, the current and future status of the minor child, and were generated in the best interests of the minor." Doc. 104, Ex. 20.

After considering the GAL Report, the several documents attached thereto (including the annuity proposal, trust agreement, information regarding the trustee, the trustee's fee schedule and investment proposal); the Supplemental GAL Report, and the several documents attached thereto (including the mediation agreement, the economic damages expert reports, Ms. Dominguez's declaration, Joe and Pauline Ponce's

declaration, the memorandum regarding the loss of consortium claim, summaries of case costs, common costs and waived costs, the settlement agreement and release, attorney fee agreement, Angelina Ponce's codicil, Rockwood subrogation ledger, the GAL's declaration and information regarding USAA Life Insurance), the Court finds the proposed settlement is fair to Izaiah and in his best interests. In reaching the settlement and structuring Izaiah's settlement funds into an annuity contract and irrevocable trust, Ponce Plaintiffs have at all times been represented and advised by counsel. The terms of the annuity contract and trust appear fair to Izaiah and protect his interests. The fees and costs deducted from the Ponce Plaintiffs' settlement funds appear fair and reasonable under New Mexico law. Accordingly, the Court approves the settlement on behalf of Izaiah Ponce.

III.    *Conclusion*

For each of the foregoing reasons, IT IS ORDERED THAT the Court GRANTS the motion to approve settlement on behalf of the minor Plaintiff Izaiah Ponce.

IT IS FURTHER ORDERED THAT Mr. Vance is released from service as GAL in this case.

Ponce Plaintiffs and Settling Defendants shall file dismissal papers as soon as practicable and not later than 30 days from this order.

Dated this 13th day of September, 2019.

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE